FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 23 2024

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PHILLIP MURRAY                                                          PLAINTIFF

VS.                          CASE NO. 4:24CV53-KGB

UNITED SECURITY, INC.                                                  DEFENDANT

## COMPLAINT

### Introduction

This is a civil rights action brought pursuant to 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658), in order to recover damages against the defendant for the unlawful discriminatory employment practices that the plaintiff, Phillip Murray, has been subjected to on account of his race. This is also an action for declaratory judgment pursuant to 28 U.S.C.S. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is also seeking equitable relief and injunctive relief as well.

### I.

### Jurisdiction

1.     Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C.S. § 1331, 1343, 1391, 42 U.S.C.S. § 1981, 42 U.S.C. §§ 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended).

2.     The unlawful employment practices alleged to have been committed against the plaintiff were committed in the State of Arkansas, and in the County of Pulaski.

This case assigned to District Judge Baker
and to Magistrate Judge Moore

## II.

### Parties

3.     The plaintiff Phillip Murray is an African American male, and is a resident of the United States of America.

4.     The defendant United Security, Inc., is a foreign for-profit corporation, that is licensed to do business in the State of Arkansas as a security company.  The agent for service of process is Martin Lacy, 6000 W. Markham Street, Little Rock, Arkansas 72205.

## III.

### Facts

5.     The plaintiff Phillip Murray started his employment with the defendant in or about May 2022 working as a security guard.

6.     The plaintiff was assigned to work as a security guard for the Park Plaza Mall.

7.     Martin Lacy, who is a Caucasian male serves as the Director of Security, and also worked at the Park Plaza Mall.

8.     Victoria Cunningham is an African American female, who at the time was the plaintiff's supervisor.

9.     United Security, Inc., has a workforce that is 75% African American, and 16.7% Caucasian, and has a contract to provide security for various businesses, including Park Plaza Mall in Little Rock, Arkansas.

10.     On or about July 6, 2022, Ms. Cunningham approached the plaintiff and told him to take some forms to the individual stores in the mall.

11.     However, the plaintiff advised Ms. Cunningham that he had been instructed by Mr. Martin that he was not to take the forms to the stores, that only a supervisor could do so

2

12. Ms. Cunningham then stated to the plaintiff, "you are going to do it, and I don't give a fuck what Marty Lacy told you, you will do this or I will kick your ass."

13. Before Ms. Cunningham made this threat to the plaintiff, she jumped up out of her chair, put her finger in the plaintiff's face, and that is when she made the above-mentioned threat.

14. Ms. Cunningham also told the plaintiff that he had better watch out while going to his vehicle, because "you might get knocked upside the head."

15. Wanting to avoid a confrontation, the plaintiff decided to leave out of the security office, and while he was doing so, Ms. Cunningham was taunting the plaintiff by yelling, "what the fuck are you going to do, what are you going to do?"

16. Rev. Murray then told Ms. Cunningham that "I'm not that type of person, I do not fight," to which Ms. Cunningham responded by saying "I don't give a fuck what type of person you are, you are going to do it."

17. The plaintiff is an ordained minister, and did not approve of this language.

18. Sometime in June 2022, Martin Lacy had told another employee – James Cole, that "we have got to get this nigger out of here."

19. Martin Lacy later told the plaintiff that he was going to be written up.

20. When Rev. Murray asked if Ms. Cunningham was going to be issued a write-up for the threat that she made against him, Martin stated "you shut up, that's my supervisor, and I will let her do whatever she wants to do!"

21. Rev. Murray responded by telling Mr. Martin "that is not right."

22. Mr. Lacy told Rev. Murray, "shut up nigger, I run things around here!"

23. Rev. Murray was issued a writeup and was told by Mr. Lacy that he would be suspended for three days, which he was.

3

24.    On or about July 9, 2022 the plaintiff was accused of making an inappropriate comment to a store employee.

25.    The plaintiff denied making this comment, because he did not make the comment.

26.    Mr. Lacy confronted the plaintiff about this comment that he supposedly had made and told Rev. Murry "nigger, I am tired of you. I am the puppet master, and you will dance to my tone, and do whatever I tell you to do!"

27.    The plaintiff protested to such comments being made towards him, to which Mr. Lacy stated, "nigger you don't have any rights, I am the boss up here!"

28.    Rev. Murray kept his composure, never getting loud or arguing with Mr. Lacy.

29.    There had been a fight at the mall prior to July 9, 2022.

30.    Rev. Murray told Mr. Lacy that he was trying to break the fight up, which involved about six to seven young ladies.

31.    There was another security officer who also intervened with Rev. Murray in an attempt to break up the fight.

32.    When Rev. Murray told Mr. Lacy about this incident, he became angry telling the plaintiff "nigger you should have slammed them to the ground!"

33.    Mr. Lacy told the plaintiff that he did not want any fighting in the mall.

34.    The police arrived about two (2) hours after the fight had taken place, but by that time, the patrons had been extricated from the mall.

35.    When Rev. Murray was trying to tell Mr. Lacy that he had taken care of the situation, Martin started yelling at the plaintiff referring to him as "nigger" several times.

4

36.    As Rev. Murray was telling Mr. Lacy about the fight that had taken place, and that he had taken care of it, he was accusing the plaintiff of lying, telling him to "shut the fuck up nigger!"

37.    Again, the plaintiff never lost his composure, and never argued with Mr. Lacy.

38.    The plaintiff was discharged from his job on or about July 13, 2022; he was not given a reason for his dismissal.

IV.

Hostile Work Environment

39.    The plaintiff incorporates by reference the allegations contained in paragraphs 1-38 of the plaintiff's complaint, and adopts each as if set out herein word for word.

40.    The defendant has subjected the plaintiff to varied terms and conditions of his employment contract, all on account of his race, in violation of his rights as protected by 42 U.S.C. § 1981.

41.    The defendant has subjected the plaintiff to a hostile working environment on account of his race when he repeatedly berated the plaintiff, calling him "nigger" on several occasions.

42.    The defendant's conduct caused the plaintiff's terms and conditions of his employment to be adversely affected, because the defendant's conduct was sufficiently severe and/or pervasive.

43.    The above-mentioned actions of the defendant caused the plaintiff to be subjected to a hostile working environment on account of his race, in violation of 42 U.S.C. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658).

44. Furthermore, the plaintiff was discharged on account of his race, in violation of 42 U.S.C. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658).

V.

Damages

45. The plaintiff incorporates by reference the allegations contained in paragraphs 1-47 of the plaintiff's complaint, and adopts each as if set out herein word for word.

46. As a direct and proximate cause of the discriminatory practices that the defendant subjected the plaintiff to on account of his race, the plaintiff has suffered economic loss by way of lost wages in an amount to be proven at the trial of this matter.

47. Furthermore, due to the discriminatory acts of the defendant, the plaintiff has experienced mental anguish, embarrassment, pain and suffering in an amount to be proven at the trial of this matter.

48. Also, the defendant subjected the plaintiff to these discriminatory practices with malice or in reckless disregard to the plaintiff's federally protected rights, making an award of punitive damages warranted.

JURY DEMAND

49. The plaintiff requests that this matter be tried before a fair and impartial jury of twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above-described unlawful employment practices:

a. declare that the plaintiff has been subjected to unlawful discriminatory practices on account of his race;

6



b.    reinstatement and back pay;

c.    compensatory and punitive damages;

d.    attorney's fees;

e.    the cost of prosecuting this action;

f.    and for all other equitable, legal, and just relief.

Respectfully submitted,

PORTER LAW FIRM
The Catlett-Prien Tower
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

By:    _____
Austin Porter Jr., No. 86145

Dated this 23rd of January 2024.

7